E-FILED
Thursday, 23 January, 2020  10:06:39 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CR-20014 |
| | ) | |
| MICHAEL A. HARI, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT MICHAEL HARI'S MOTION TO TRANSFER CASE FOR TRIAL

The United States of America, by and through its attorneys, John C. Milhiser, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Eugene Miller, respectfully requests that this Court deny Defendant Michael Hari's Motion to Transfer. (R.77) The defendant's motion to transfer this Central District of Illinois case to Minnesota for trial is unwarranted under Rule 21 of the Federal Rules of Criminal Procedure.

## INTRODUCTION

The defendant, Michael Hari, a resident of the Central District of Illinois, seeks a change of venue from this district to the District of Minnesota for his trial on charges arising in this district. Transfer of this case to the District of Minnesota is unjustified under Rule 21, as established by the leading U.S. Supreme Court case construing that rule. Moreover, the defendant appears to misapprehend the result of such a transfer. The defendant suggests that if this case is transferred to Minnesota, it will result in a

single trial in Minnesota. Joinder of this case with the Minnesota case is permissive, however, not mandatory. Therefore, the cases will not be joined. Instead, a transfer would result in two successive trials in Minnesota, which would impose a substantial inconvenience to the Illinois victims, witnesses, and parties, and a net increase in the burden on the federal courts. Thus, a transfer of this case to Minnesota is both unjustified and unwarranted.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Instant Charges.

On April 4, 2018, a federal grand jury in the Central District of Illinois indicted Hari, along with co-defendants Joe Morris, Michael McWhorter, and Ellis "EJ" Mack, for possession of a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), in the instant case. (R.33)

On May 2, 2018, the grand jury added a charge for conspiracy to interfere with commerce by threats and violence, in violation of 18 U.S.C. § 1951 (The Hobbs Act). (R.39) The superseding indictment alleges that the conspirators repeatedly met in Clarence, Illinois (where the defendant resided) in Ford County in the Central District of Illinois and traveled together from there to (a) Watseka and Mt. Vernon, Illinois to rob WalMart stores; (b) Ambia, Indiana to rob individuals involved in interstate commerce; (c) Effingham, Illinois to damage railroad tracks and attempting to extort money; and (d) Clarence, Illinois to plant explosive materials on someone's property. (R.39, Count 2)

2

The superseding indictment also alleges that the defendants attempted to damage the Women's Health Practice in Champaign, Illinois by mean of fire and an explosive, in violation of 18 U.S.C. § 844(i) (R.39, Count 3), and that the defendant possessed numerous firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (R.39, Count 4) The superseding indictment does not reference any conduct in Minnesota.

On April 2, 2019, the grand jury returned a two-count indictment against defendant Wesley Johnson, alleging that he was a member of the Hobbs Act conspiracy and that he had participated in the attempted arson of the Women's Health Practice. All the defendants except Michael Hari and Wesley Johnson have resolved their cases in this district through negotiated pleas of guilty.

## II.    The Minnesota Charges.

According to the indictment in the Minnesota case (R.14 in D. Minn.) and the affidavit in support of the Minnesota criminal complaint (R.1 in D. Minn.), at a few minutes after five in the morning on August 5, 2017, the window of the Imam's office at the Dar al-Farooq Islamic Center in Bloomington, Minnesota, was broken with a sledge hammer. A large pipe bomb and a container holding a mixture of gasoline and diesel fuel were then thrown through the broken window and into the Imam's office. The pipe bomb exploded, and a fire broke out, fed by the diesel/gasoline mixture. The Imam's office and its contents suffered significant blast and shrapnel damage. The mosque's sprinkler system activated, and the fire was extinguished before it spread beyond the

3

Imam's office, but not quickly enough to prevent the Imam's office suffering flame, smoke, and water damage. The mosque was occupied, because morning prayers had just concluded.

On June 20, 2018, a District of Minnesota grand jury returned an indictment (R.14 in D. Minn.), charging Michael Hari, Joe Morris, and Michael McWhorter with perpetrating the Dar al-Farooq bombing, and, by doing so, committing two federal civil rights felonies: Intentionally Defacing, Damaging, and Destroying any Religious Real Property Because of the Religious Character of that Property, in violation of 18 U.S.C. § 247(a)(1); and Intentionally Obstructing, and Attempting to Obstruct, by Force and the Threat of Force, the Free Exercise of Religious Beliefs, in violation of 18 U.S.C. § 247(a)(2).

The Minnesota grand jury also indicted defendants Hari, Morris, and McWhorter for Conspiring to Commit Federal Felonies (the two federal civil rights felonies described above) by Means of Fire and Explosives, in violation of 18 U.S.C. § 844(h) and 844(m); and with Carrying and Using a Destructive Device During and in Relation to Crimes of Violence, in violation of 18 U.S.C. § 924(c)(1)(B)(2). Hari was charged by himself with Possession of an Unregistered Destructive Device, in violation of 26 U.S.C. § 5845(a) and 5861(d). Defendants Morris and McWhorter resolved the Minnesota charges against them through negotiated pleas of guilty, leaving only Hari's case unresolved in the District of Minnesota.

Hari has not been indicted in Minnesota for the Illinois Hobbs Act robberies, firearms offenses, or attempted arson. Ellis Mack and Wesley Johnson, as noted above, were charged only in the Central District of Illinois, and not in Minnesota. Moreover, Hari was not charged in Illinois with civil rights offenses, possession of an unregistered destructive device, or conspiring to commit federal civil rights felonies by means of fire and explosive.

## III.   Hari's Varying Trial Requests.

On June 3, 2019, the defendant responded to the request of the United States to continue the July 15, 2019, trial date in this case by accusing the United States of not acting in good faith and objecting to its request to continue the Illinois trial until the conclusion of the scheduled Minnesota trial. (R.68) On August 1, 2019, the defendant changed his position and requested that his jury trial in Minnesota be conducted prior to his jury trial in Illinois. (D.E. 8/1/2019) The Court granted his request. Moreover, upon information and belief, the Court informed the defendant during the telephone hearing that it might be some time before the Minnesota charges were resolved and he would be tried in Illinois. Defense counsel stated that counsel had informed the defendant that it was unlikely he would be permitted to change his mind again regarding this issue. As a result, the Minnesota trial has long been scheduled to take place in St. Paul on February 18, 2020, with the Illinois trial scheduled for March 30, 2020.

The defendant has once again changed his position. Approximately five weeks before his Minnesota trial, the defendant seeks to change the venue of his Illinois case to Minnesota. The motion should be denied.

<u>**ARGUMENT**</u>

The defendant asserts numerous times in his motion that it will be more efficient to have one trial in Minnesota than one trial each in Illinois and Minnesota. Even assuming that efficiency (as opposed to convenience) could justify a transfer under Rule 21, one consolidated trial in Minnesota would not be more efficient. Moreover, the defendant incorrectly assumes that a transfer will result in a single trial in Minnesota.

**I.      It Would Be an Abuse of Discretion Under Rule 21 to Transfer This Case To Minnesota for Trial.**

The defendant asserts that Rule 21 of the Federal Rules of Criminal Procedure permits transfer of his Illinois trial to Minnesota, relying on the Supreme Court's opinion in *Platt v. Minnesota Mining and Mfg. Co.*, 376 U.S. 240 (1964). Neither Rule 21 nor *Platt* supports a transfer of the Illinois trial to Minnesota. As discussed in detail, *infra,* granting the defendant's requested transfer under Rule 21 would only be "convenient" to the defendant – it would be dramatically inconvenient to the victims, the witnesses, and the United States, and not in in the interest of justice.

*Platt* does not support transfer any more than Rule 21. *Platt* was a criminal antitrust case, filed by the Justice Department in what was then the Danville Division of the Eastern District of Illinois, which is now part of this district. The defendants were charged with conspiring to monopolize the markets for several nationally-sold

6

products, and the case could have been brought in any one of several judicial districts. *Id.* at 242. This distinguishes *Platt* from this case, where the only appropriate venue for all of the charges contained in the superseding indictment is the Central District of Illinois. The corporate defendant in *Platt* sought a change of venue to the District of Minnesota, which the district court denied. The Court of Appeals reversed the district court.

The Supreme Court reversed the Court of Appeals and remanded the case to the district court. In doing so, the Supreme Court listed ten factors the district court had originally used to decide the motion.

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Id.* at 243–44. Although the Supreme Court neither approved nor disapproved of the factors on the district court's list, *id.* at 244-46, in the years since *Platt* was decided, the Seventh Circuit has used those factors to analyze Rule 21(b) motions. *See, e.g., United States v. Jordan*, 223 F.3d 676, 685-86 (7th Cir. 2000) (finding no abuse of discretion where district court refused to transfer case from Illinois because "[v]enue is not the defendant's choice to be determined on the basis of where he believes a jury might be more sympathetic to his political views"); *see also United States v. McGregor*, 503 F.2d

1167, 1170 (8th Cir. 1974). In this case, the relevant[1] *Platt* factors either weigh against transfer or are neutral.

The first of the *Platt* factors is the location of the defendant. In this case, the defendant resides in Clarence, Illinois. Although the defendant may argue this factor is entitled to no weight since it is he is who is seeking to move the case to a district outside his home district, this factor, at the very least, does not support his requested transfer to Minnesota.

The second *Platt* factor is the location of possible witnesses. This factor strongly favors a trial in this district. Moreover, Rule 21 itself refers to the convenience of not only witnesses, but any victims. In this case, there are numerous victim-witnesses located in Illinois, plus nearby Ambia, Indiana. There are employees of the Women's Health Practice who had their clinic bombed; WalMart employees who had guns pointed at them; victims of a home invasion who were restrained at gun point; employees of the Canadian National Railway who had their tracks damaged and were extorted for money. The defendant's request seeks to victimize these individuals again – this time by requiring them to suffer the inconvenience of traveling approximately 505 miles further than the Urbana courthouse to the unfamiliar surroundings of the federal

---

[1] *Platt* factors five (disruption of the defendant's business), eight (accessibility of the place of trial), and nine (condition of the docket in the transferee and transferor districts) do not appear relevant to the defendant's motion.

8

courthouse in St. Paul, Minnesota for the "convenience" of their alleged assailant. This is not "in the interest of justice," as required by Rule 21.

Similarly, the third *Platt* factor is the location of events likely to be in issue. This factor likewise strongly favors a trial in this district. The events charged in this case occurred in Champaign, Mt. Vernon, Watseka, and Effingham, Illinois, as well as in Ambia, Indiana, which is located approximately 58 miles from the Urbana courthouse. Obviously, the citizens of these locations have a strong interest in seeing crimes committed in their state tried in their state. *Cf.* U.S. Const. art. III, § 2, cl. 3 ("Trial shall be held in the State where the said Crimes shall have been committed."). Moreover jurors drawn from the Central District of Illinois will be much more familiar with and have a better understanding of the locations of the events at issue than jurors drawn from Minnesota. Again, the interest of justice strongly weighs in favor of these Illinois crimes being tried in Illinois.

The fourth *Platt* factor is the location of documents and records. The defendant is correct that electronic records make it easier than it was when *Platt* was decided to transfer documents from one district to another. Of course, this simply means that this factor does not weigh *as* heavily against transfer as it may have in 1964 – it still weighs against transfer, however. Additionally, the defendant's argument ignores that the witnesses who will use those documents in their testimony would need to travel 500 miles for trial.

Defendant claims that *Platt's* sixth factor, expense to the parties, does not tip the scales either way because the prosecution's evidentiary presentation would be the same in both districts. The defendant's assumption is incorrect. The undersigned Assistant United States Attorney has been in close consultation with his colleagues in Minnesota since the beginning of these cases, more than one and one-half years ago. While the Minnesota jury may hear some evidence of alleged criminal activity alleged in this case (depending on the Minnesota court's rulings), the Minnesota jury will not hear evidence of everything that happened in this case. A full trial of the this case in Minnesota, by contrast, would require moving all of the Illinois witnesses and exhibits to Minnesota, incurring extensive travel and lodging expenses. It would also make logistical management of the trial, including the scheduling of witnesses, quite expensive and challenging. Thus, this factor overwhelmingly favors a trial of these charges in Illinois.

The defendant's assertion regarding the seventh *Platt* factor, location of counsel, is equally presumptuous. The defendant dismisses this factor with an assertion that, after all, the Justice Department is prosecuting both cases. (R.77 at 5-6) In fact, these cases are being prosecuted by two separate United States Attorney's Offices, each rooted in its own district, each staffed by prosecutors who are highly knowledgeable of their district, its geography, its sociology, and the institutions located in the district. The U.S. Attorney's Office for the Central District of Illinois has handled this case for more than 18 months and cannot simply hand off the case to another district. Moreover, the United States is entitled to continuity of counsel on this case. *Cf.* 18 U.S.C.

§ 3161(h)(7)(B)(iv) (factors a judge shall consider include whether the failure to grant a continuance "would unreasonably deny the Government continuity of counsel"); *United States v. Napadow*, 596 F.3d 398, 404 (7th Cir. 2010) ("Among the factors that a district court must consider [are] . . . 'continuity of counsel.'"); *United States v. Wasson*, 679 F.3d 938, 945 (7th Cir. 2012) (continuity of government counsel cited as basis for continuance). Thus, granting the defendant's motion would require Central District of Illinois prosecutors and paralegals to relocate to Minnesota for the trial – an enormously expensive and inconvenient undertaking. This factor strongly favors keeping this case in this Court.

## II. A Transfer To Minnesota Will Result In Two Trials, Not One Trial, In Minnesota

The tenth *Platt* factor is a catch-all of "special elements which might affect the transfer," and defendant shoehorns into this category his claims about joinder. Rule 21 itself, of course, makes no mention of joinder or any similar factor. Nonetheless, the defendant asserts that "transfer and joinder . . . are being requested here." (R.77 at 9) The defendant's joinder request, however, ignores the obstacles to joinder presented by principles of venue. After all, the Constitution and federal law requires that a crime be tried in the district where the crime was committed. U.S. Const. art. III, § 2, cl. 3 & amend. VI; Fed. R. Crim. P. 18. Although Rule 21 permits a transfer, Rule 21 does not expressly or implicitly permit joinder of cases where venue properly lies in different districts. Thus, not surprisingly, the defendant does not give any guidance as to how

11

joinder of two such factually distinct cases alleging separate crimes occurring in separate districts is to be accomplished.

Even if the defendant could overcome these insurmountable venue issues regarding joinder, this case still would not be joined with the Minnesota case following a Rule 21 transfer. Joinder of offenses is governed by Fed. R. Crim. P. 8(a), which states: "The indictment or information *may* charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." (emphasis added.) Under this standard, the Minnesota and Illinois cases should not to be joined.

For example, while the Illinois Women's Health Practice attempted arson and the Minnesota mosque bombing are factually similar, in that in both cases, the same defendants broke a window, and threw either an incendiary device (Illinois) or a bomb (Minnesota) through the broken window, that does not change the facts that in Minnesota, the defendants' alleged motive was the use of violence to interfere with religious belief. This motive does not apply to the charges in this case. As to the other crimes alleged here, they involve additional defendants (Johnson and Mack), and are not bombings but armed robberies, a home invasion, and an attempted extortion.

Under the catch-all language of *Platt's* tenth factor, the defendant also claims that a single trial avoids the risk of inconsistent verdicts, is judicially efficient, avoids some unspecified and vaguely-stated prejudice to the defendant's trial strategy ("the defense

[is] hobbled strategically by its considerations of the effect of the Minnesota case on the subsequent Illinois case," (R.77 at 10)), and finally asserts that the Seventh Circuit, in *United States v. Cardena*, 842 F.3d 959, 981 (7th Cir. 2016), held that there was a presumption of joinder in conspiracy cases.

Verdicts cannot be inconsistent when rendered on different facts and different charges. Nor will judicial efficiency be advanced by a change of venue. If the defendant's motion is granted, there will be two trials in Minnesota, and because of the inconvenience and expense associated with trying this expansive Illinois case 500 miles away in a different district (and circuit), it will be much less efficient than having one Minnesota trial and one Illinois trial.

Nor does *United States v. Cardena,* 842 F. 3d 959, 981 (7th Cir. 2016) support the defendant's requested joinder. *Cardena* was a case in which the defense sought to sever, not join, counts. Neither the Seventh Circuit, nor the district court, considered whether a defendant could have two disparate indictments, in two separate districts, joined together. In addition, the Seventh Circuit found that the defendant had waived his severance argument, *id.* at 980, making its subsequent comments on severance dicta. Regardless, the Seventh Circuit's comments focused on joinder of defendants, not joinder of offenses. *Id.* at 981 ("there is a presumption that participants in a conspiracy or other criminal schemes should be tried together") (quoting *United States v. Phillips,* 239 F.3d 829, 838 (7th Cir. 2001)).

13

In fact, the Seventh Circuit's presumption counsels against transferring this case to Minnesota. As of now, co-conspirator Wesley Johnson's case remains pending in this district pretrial. If the defendant's case is transferred while Johnson's case remains here (and Johnson's case *cannot* be transferred to a district without venue without his consent), it could result in the very problem *Cardena* discouraged – participants in the conspiracy will not be tried together.

 The defense has not cited any case in which a court held that a defendant, even in a conspiracy case, is entitled to compel the joinder of two indictments in two different districts through a Rule 21 change of venue motion. The government is not aware of any authority that would support the defendant's requested transfer and joinder in this case.

To join the two cases, they would have to be alleged in a single indictment. For all the reasons set out in this responsive pleading, the United States does not intend to seek such an indictment. In the Eighth Circuit, where, post-transfer, joinder would have to be effectuated, a defendant cannot compel a court to order the grand jury to issue such a joint indictment. *United States v. Rabbitt*, 583 F.2d 1014, 1021 (8th Cir. 1978). The same is true in this Circuit, *United States v. Rein*, 848 F.2d 777, 780 (7th Cir. 1988) (citing Fed. R. Crim. P. 8(a). *See also* 1 C. Wright, Federal Practice and Procedure § 143, at 480 (2d ed. 1982). As the Seventh Circuit held in *Rein*, "there is no compulsory joinder under federal criminal law." 848 F. 2d at 780.

14

## **CONCLUSION**

The case before this Court is a Central District of Illinois case. The events took place in this district, or immediately adjacent to this district, in Ambia, Indiana, and Effingham, Illinois. The witnesses are here; the events occurred here; the prosecutors and defense attorneys reside here; the jurors who would decide the case are from here. In addition, the defendant incorrectly assumes that all the evidence that would be presented at trial in his case will also be presented in a trial of the Minnesota case. The Minnesota jury will hear substantially less evidence about criminal activity occurring in Illinois that will the Central District of Illinois jury. Transfer will not save time, money, or burden to witnesses. In any event, the cases should not be, and cannot be, joined. For all these reasons, the United States respectfully asks that the defense motion for change of venue be denied.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

s/Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
Fax: 217-373-5891
eugene.miller@usdoj.gov

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2020, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

> Elisabeth R. Pollock, Esq.
> Assistant Federal Public Defender
> 300 West Main Street
> Urbana, IL 61801
>
> Thomas W. Patton, Esq.
> Federal Public Defender
> Suite 1500
> 401 Main Street
> Peoria, IL 61602

> s/Eugene L. Miller
> Eugene L. Miller, Bar No. IL 6209521
> Assistant United States Attorney
> 201 S. Vine St., Suite 226
> Urbana, IL 61802
> 217/373-5875
> Fax: 217-373-5891
> eugene.miller@usdoj.gov